# IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
# IN AND FOR ORANGE COUNTY, FLORIDA

UNITED TITLE GROUP, LLC,

        Plaintiff,

CASE NO:

v.

REGIONS BANK,

        Defendant(s).

_____/

## COMPLAINT

Plaintiff, UNITED TITLE GROUP, LLC, sues the Defendant REGIONS BANK, and alleges as follows:

### JURISDICTION AND VENUE

1.    This is an action for damages based upon negligence. The amount in controversy exceeds $15,000, exclusive of interest and costs.

2.    Plaintiff, UNITED TITLE GROUP, LLC ("UTG"), is a Florida corporation having its principal place of business at 500 Winderley Place, Suite 320, Maitland, FL 32751.

3.    Defendant, REGIONS BANK, is a Alabama corporation, with its principal place of business at 1900 Fifth Avenue North, Birmingham, AL 35203, and authorized to conduct business in the State of Florida.

4.    Venue is proper in this jurisdiction in that the cause of action accrued in Orange County, Florida.

### BACKGROUND

5.    United Title Group, LLC is a full service title insurance agency that provides residential and commercial real estate settlement services, title insurance, and related real estate products.

**COMPOSITE EXHIBIT B**

6. United Title Group averages between 400-600 wire transfers a month. Many of said wire transfers occur during the last week of the month.

7. At the time of the incident, UTG maintained its corporate escrow account with Defendant, Regions Bank.

8. Additionally, UTG used Regions iTreasury system to manage all wire transfers.

9. Regions iTreasury system enables its customers to completely manage all banking needs, including wire transfers, online and without the need of downloading additional software.

10. Users log into the iTreasury system via the Internet through Regions OnePass portal by way of a personal username and password.

11. Once logged into iTreasury, users are able to input wire transfers into the system for disbursement.

12. After a user inputs a wire transfer, Regions iTreasury system sends a text message to the user's cellphone, or calls them on a pre-automated line, advising them that a wire transfer has been inputted and ready to be released.

## FACTUAL ALLEGATIONS

13. On or about March 31, 2016 Vania Donova ("Ms. Donova"), a Funding Manager with United Title Group, LLC, called Defendant when Ms. Donova was unable to log into Regions iTreasury system.

14. At the inception of the telephone conversation with Regions Bank, Ms. Donova advised Defendant that she was unable to log into Regions iTreasury system with her personal username and password.

15. Within the first few minutes of the telephone conversation with Defendant, Ms. Donova advised Defendant that she received a text message from Regions stating that a wire transfer was inputted into iTreasury.

16. Ms. Donova immediately advised Defendant that she should not be receiving these text messages as she was not logged into the Regions iTreasury.

17. Defendant confirmed and acknowledged with Ms. Donova that it saw her username logged in and that at least three wire transfers were inputted and entered into iTreasury under Ms. Donova's username.

18. Ms. Donova continuously and repeatedly emphasized that she was not processing, initiating, entering or inputting wires into Regions iTreasury system as she was unable to log in.

19. Ms. Donova further told Defendant that any wire transfers inputted under her username were illegitimate.

20. Ms. Donova also advised Defendant that other users in the company were inputting and releasing wires while she was on the telephone with Defendant.

21. Once Defendant determined that Ms. Donova was not inputting wire transfers under her username, Defendant advised Ms. Donova that it was concerned that a virus or malicious malware may have compromised Ms. Donova's computer.

22. Defendant provided Ms. Donova with steps to prevent and protect further information and other users in the company from being compromised, including: (i) shutting down the PC; and (ii) removing the Ethernet cord.

23. In total, Ms. Donova and Defendant's telephone conversation lasted for over an hour.

24. Ultimately, Defendant failed to deactivate Ms. Donova's username despite Ms. Donova repeatedly advising Defendant that she was unable to login to iTreasury; Ms. Donova continuously advising Defendant that she was not processing, initiating, entering, or inputting wires into iTreasury; Defendant acknowledging concerns that a virus or malicious malware

compromised Ms. Donova's computer; and Defendant being aware that another user was initiating and approving wires.

25. Additionally, Defendant failed to delete wire transfers totaling $478,000, inputted under Ms. Donova's username, despite being repeatedly informed for almost an hour of said illegitimate and unauthorized wires with reasonable and sufficient time to delete said wire.

26. Furthermore, Defendant failed to stop and delete the illegitimate and unauthorized wires after immediately learning that said wires were released, despite having reasonable time to stop and delete said wire before it was transferred.

27. Defendant's failures caused said illegitimate and unauthorized wires in the amount of $478,000 to be funded, processed, disbursed, and released to an unauthorized third party.

## COUNT I - NEGLIGENCE

28. Plaintiff incorporates by reference and realleges the allegations contained in Paragraphs 1 through 26 of this Complaint.

29. This is an action for damages against Defendant for negligence.

30. The Defendant owed the Plaintiff a duty of ordinary care with respect to protecting Plaintiff's funds from unauthorized transfers that it knew, or should have known to exists, prior to said funds being disbursed and released.

31. Defendant breached its duty of ordinary care when it failed to deactivate Ms. Donova's username despite Ms. Donova repeatedly advising Defendant that she was unable to login to iTreasury; Ms. Donova continuously advising Defendant that she was not processing, initiating, entering, or inputting wires into iTreasury; Defendant acknowledging concerns that a virus or malicious malware compromised Ms. Donova's computer; and Defendant being aware that another user was initiating and approving wires.

32. Additionally, Defendant breached its duty of ordinary care when it failed to delete wire transfers totaling $478,000, inputted under Ms. Donova's username, despite learning of said illegitimate and unauthorized wires with reasonable and sufficient time to delete said wires.

33. Furthermore, Defendant breached its duty of ordinary care when it failed to stop and delete the illegitimate and unauthorized wires after immediately learning that said wires were released, despite having reasonable time to stop and delete said wire before it was transferred.

34. As a direct and proximate result of Defendant's breach, the Plaintiff suffered damages in the amount of $478,000.

WHEREFORE, Plaintiff requests that this Court enter a Judgment against Defendant, REGIONS BANK, for compensatory damages, pre-judgment interest, post-judgment interest, costs, attorneys' fees and such other and further relief, at law or in equity, which this Court deems just.

SIGNED this 9th day of September 2016.

**FERMIN AND FERMIN, P.A.**
Attorney for Plaintiff
1800 Pembrook Dr., Ste 300
Orlando, FL 32810
Telephone: 321-207-8123
Facsimile: 321-806-1467
**e-service: service@ferminandfermin.com**

By: */s/ Luis M. Fermin*
[X]    Luis M. Fermin, Esquire
       Florida Bar No.: 105122
       lfermin@ferminandfermin.com
[ ]    Cedella C. Fermin, Esquire
       Florida Bar No.: 105123
       cfermin@ferminandfermin.com